**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**ABILENE DIVISION**

| | | |
|---|---|---|
| | § | |
| **JESSIE C. AGUIRRE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 1:07-CV-093-C** |
| | § | **ECF** |
| | § | |
| **MICHAEL J. ASTRUE,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS CASE** is before the court upon Plaintiff's complaint filed May 8, 2007, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's applications for disability insurance benefits and for supplemental security income ("SSI") benefits under Title II and Title XVI of the Social Security Act. Plaintiff filed a brief in support of his complaint on October 4, 2007, and Defendant filed a brief on October 17, 2007. The parties consented to having the United States Magistrate Judge conduct all further proceedings in this case on May 14, 2007 (Doc.10), and June 27, 2007 (Doc. 16). This court has considered the pleadings, the briefs, and the administrative record and finds that the Commissioner's decision should be affirmed and that Plaintiff's complaint should be dismissed with prejudice.

## I.  STATEMENT OF THE CASE

Plaintiff filed applications for disability insurance benefits and for supplemental security income benefits on December 30, 2004, alleging disability beginning December 1, 2004.  Tr. 20,

64-66. Plaintiff's applications were denied initially and upon reconsideration. Tr. 20, 29-35, 38-42. Plaintiff filed a Request for Hearing by Administrative Law Judge on April 20, 2005, and this case came for hearing before the Administrative Law Judge ("ALJ") on August 2, 2006. Tr. 20, 43, 223-47. Plaintiff, represented by a non-attorney, testified in his own behalf. Tr. 227-42. Barbara Dunlap, a vocational expert ("VE"), appeared and testified as well. Tr. 242-46. The ALJ issued a decision unfavorable to Plaintiff on August 24, 2006. Tr. 17-26.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. He found that: Plaintiff met the disability insured status requirements through the date of his decision, and Plaintiff had not engaged in substantial gainful activity at any time since December 1, 2004. Tr. 21, 25. Plaintiff has "severe" impairments, including loss of vision in his left eye, chronic left dysethetic hand pain, paralysis of the left hand fingers with forearm atrophy, and cervical nerve root avulsion. *Id*. Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. Tr. 22. Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform his past relevant work or other work existing in the national economy.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p. *Id*.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning his impairments and their impact on his ability to work were not entirely credible. Tr. 23, 25.

The ALJ found that Plaintiff could not return to his past relevant work.  *Id*.  He noted that Plaintiff

was considered a "younger individual" with a high school education.  20 C.F.R. §§ 416.963,

416.964; Tr. 21, 24-25.

The ALJ found that Plaintiff retained the RFC to perform a range of light work activity,

limited to lifting/carrying 10 pounds frequently and 20 pounds occasionally; standing/walking 6

hours in an 8-hour workday; sitting 6 hours in an 8-hour workday; and pushing/pulling with the

upper extremities limited to 20 pounds. The ALJ specifically found that in addition to the exertional

limitations of lifting and carrying no more than light weight and pushing and pulling no more than

20 pounds with the upper extremities, Plaintiff would be unable to handle, finger, and feel with his

left hand due to the loss of flexion/extension in his left fingers and would also be precluded from

performing work that requires vision in the left eye.  Tr. 23, 25-26.

Having found that Plaintiff could not perform the full range of light work, the ALJ turned

to the testimony of the VE in determining whether Plaintiff was capable of making a vocational

adjustment to other work despite his severe impairments.  Tr. 24, 26.  He relied upon the testimony

of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and

vocational history, could perform work which exists in the national economy, including the jobs of

courier/light delivery, with 6,000 jobs in Texas and 80,000 jobs nationally; laundry worker, with

10,000 jobs in Texas and 150,000 jobs nationally; and cleaner/janitor, with 12,000 jobs in Texas and

150,000 jobs nationally. *Id*.  The ALJ, therefore, concluded that Plaintiff was not disabled within

the meaning of the Social Security Act at any time through the date of his decision.  Tr. 25-26.

Plaintiff submitted a Request for Review of Hearing Decision/Order on October 12, 2006.

Tr. 12-13.  After granting a 25-day extension, the Appeals Council denied Plaintiff's request and

issued its opinion on February 26, 2007, indicating that although it had considered the contentions

raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for

changing the ALJ's decision. Tr. 5-10. The ALJ's decision, therefore, became the final decision of the Commissioner.

On May 8, 2007, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.    STANDARD OF REVIEW

An applicant may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g). The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453. In this case the ALJ found at step 5 that Plaintiff was not disabled because he retained the ability to perform work in the national economy. Tr. 24, 26.

## III. DISCUSSION

Plaintiff claims that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence because the ALJ failed to properly consider all of Plaintiff's impairments and failed to appropriately develop the record as to Plaintiff's mental impairment, failed to give proper weight to Plaintiff's treating physician's opinion, and erred in relying upon the testimony of the VE in finding at step 5 that Plaintiff can perform other work existing in significant numbers in the national economy, where such testimony conflicted with information in the *Dictionary of Occupational Titles* ("DOT")[1]. Plaintiff further alleges that the ALJ erred by failing to find at step 3 that his impairments met or equaled in severity the criteria of Section 1.04 of the Listing of Impairments.[2] Plaintiff thus argues that he is entitled to a finding of presumptive disability and an award of immediate benefits. The ultimate issue is whether the ALJ's decision is supported by substantial evidence. The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

---

[1]     *See* United States Dept. of Labor, Employment & Training Admin., *Dictionary of Occupational Titles* (4th ed. 1991) ("DOT").

[2]     The court has considered each of Plaintiff's arguments. However, this memorandum opinion addresses these arguments in A slightly different order.

**A.** **Whether the ALJ failed to appropriately consider all of Plaintiff's impairments**.

Plaintiff argues that the ALJ erred by failing to appropriately consider all of his impairments. Plaintiff alleges that the ALJ failed to appropriately develop the record as to his mental impairment and failed to incorporate limitations reflecting all of Plaintiff's impairments into the RFC finding. Plaintiff's argument about the RFC finding are addressed separately below.

A physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The existence of an impairment does not in itself establish disability; a claimant is disabled only if he or she is "incapable of engaging in any substantial gainful activity." *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir.1986).

In determining whether a claimant's physical or mental impairments are of a sufficient medical severity as could be the basis of eligibility under the law, the ALJ is required to consider the combined effects of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. See 20 C.F.R. § 404.1523. *Loza*, 219 F.3d at 393. If the ALJ finds a medically severe combination of impairments, "the combined impact of the impairments will be considered throughout the disability determination process." *Id.*

In his opinion the ALJ found that Plaintiff has "severe" impairments including a loss of vision in his left eye, chronic left dysesthetic hand pain, paralysis of the left hand fingers with forearm atrophy, and cervic nerve root avulsion. Tr. 21. The ALJ found that these impairments, considered singly and in combination, did not meet or equal in severity any impairment in the Listing of Impairments.

The ALJ noted Plaintiff's complaint of chronic hand pain which precluded him from lifting, carrying, or gripping objects with his left hand. Tr. 22. He also noted that Plaintiff reported pain

in his left elbow and hand, that he cannot use his left fingers, and that he has loss of vision in his left eye, headaches, and left shoulder pain. *Id*.

Dr. Edward J. Brandecker, a rehabilitative medicine specialist, is Plaintiff's treating physician. Tr. 177-79. Dr. Brandecker began treating Plaintiff for pain and weakness in his left hand, following a motor vehicle accident in which Plaintiff sustained an upper extremity brachial plexus injury. Tr. 177. A nerve conduction study performed on October 9, 1992, indicated evidence of a lower plexus (C8-T1) supraclavicular brachial plexus injury. Tr. 175. After a CT scan, Dr. Brandecker opined that Plaintiff sustained a nerve root avulsion. Tr. 163. Dr. Brandecker released Plaintiff back to work on April 26, 1993. Tr. 162. On September 1, 1993, Dr. Brandecker noted that Plaintiff was functioning well at work and was able to compensate for his limitations. Tr. 159. Plaintiff was still experiencing pain. *Id*. Plaintiff was thereafter noted to be doing relatively well and was continuing to work, albeit with chronic pain involving the left hand. Tr. 153. Dr. Brandecker noted that Plaintiff was managing with his sensory deficits and paresthesias relative to nerve root avulsion of the lower cervical cord. *Id*.

On June 22, 1994, Plaintiff reported increased pain, aggravated by driving a tractor eight to twelve hours a day. Tr. 152. Plaintiff later reported that his pain improved and he was able to minimize his medication. Tr. 149. Plaintiff reported that he was able to manage his pain with Tegretol. Tr. 148. On September 8, 1997, Plaintiff reported that the Tegretol continued to control his neuritic pain with pain sensitivity in the hand. Tr. 147. Dr. Brandecker noted upon examination that sensation remained diminished to pinprick over the third, fourth, and fifth digits of the left hand, with no intrinsic muscle function of the hand, although wrist extension is 4+/5, biceps and deltoid strength was full, and triceps were 4/5. *Id*. Dr. Brandecker's progress note dated September 8, 1998, indicated Plaintiff's report that the Tegretol was becoming less helpful. Tr. 146. Dr. Brandecker noted that Plaintiff's medication was changed to Neurontin which provided no

significant benefit for his worsening pain. Tr. 143. Therefore, Dr. Brandecker started him on Klonopin. *Id*.

On January 8, 1999, Dr. Brandecker noted Plaintiff's report that the Klonopin left him sedated and did not provide significant pain relief. Tr. 142. Therefore, he instructed Plaintiff to continue with Klonopin before going to sleep and added Mexilitine. *Id*. On February 5, 1999, Plaintiff reported that his pain improved with this medication regimen. Tr. 141. A progress note dated May 14, 1999, indicates that this medication regimen provided "significant improvement," that Plaintiff was able to work full-time, and that he occasionally experienced exacerbation of pain, for which he could take Lortab on an occasional basis. Tr. 140. Dr. Brandecker noted that Plaintiff reported some left shoulder pain using a tractor all day, as well as using the upper left extremity heavily. Tr. 139. He noted that there was weakness of the hand muscles and mild weakness of the left triceps. *Id*. Progress notes indicate that Plaintiff's pain was being treated by Dr. Brandecker with Klonopin. Tr. 135-37.

Dr. Brandecker noted on July 21, and November 17, 2000, that Plaintiff was doing well. Tr. 133-34. His progress note dated March 16, 2001, indicates no change in Plaintiff's condition. Tr. 132. However, on September 21, 2001, Dr. Brandecker's progress note indicates that Plaintiff sustained a burn injury which became infected, that he continued to work with chronic left upper extremity pain, that he was "beginning to sustain injury secondary to loss of sensation in the arm," and that it was becoming increasingly difficult for Plaintiff to work. Tr. 131. Dr. Brandecker opined that Plaintiff was "disabled as a result." *Id*. He changed Plaintiff's medication to Topomax on December 20, 2001, and noted about six weeks later that Plaintiff was doing well with the medication. Tr. 129-30.

Plaintiff further argues that the ALJ failed to appropriately develop the record as to any mental impairment. He notes that evidence in the record indicates that he was prescribed the

medication Klonopin.  As discussed above, the record does indicate that Plaintiff was prescribed Klonopin by Dr. Brandecker for the treatment of his neuropathic pain.  The record does not indicate that Plaintiff was treated for a mental impairment.  Plaintiff argues that the ALJ should have further developed the record regarding Plaintiff's mental impairment because an occupational therapist noted that Plaintiff had some cognitive deficits and because in 1992 Plaintiff sustained a skull fracture in a motor vehicle accident that required a craniotomy.  Tr. 126, 177, 183.  Plaintiff worked for many years after this accident.   Plaintiff argues that these facts were sufficient to trigger the ALJ's duty to develop the record regarding a mental impairment.

However, the ALJ's duty to investigate "does not extend to possible disabilities that are not alleged by the claimant or to those disabilities that are not clearly indicated on the record." *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995).  The only evidence that Plaintiff identifies dates well prior to the alleged onset date. In addition, Plaintiff's testimony does not indicate any mental impairment.  The evidence of record indicates that Plaintiff was prescribed Klonopin for the treatment of his neuropathic pain.  There is no evidence in the record indicating that during the relevant time period, Plaintiff had a mental impairment or was treated for a mental impairment.

Clearly, the ALJ has a duty "'to develop the facts fully and fairly relating to an applicant's claim for disability benefits.'" *Boyd v. Apfel*, 239 F.3d 698, 708 (5th Cir. 2001) (quoting *Newton*, 209 F.3d at 458).  The claimant has the burden to prove that he is disabled within the meaning of the Social Security Act.  *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987).  The court may not reverse the decision of an ALJ for failure to fully and fairly develop the record unless the claimant shows that he or she was prejudiced by the ALJ's failure.  *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000) (citing *Brock v. Chater*, 84 F.3d 726 (5th Cir. 1996)).  In order to establish prejudice, a claimant must demonstrate that he or she "could and would have adduced evidence that might have altered the result." *Carey*, 230 F.3d at 142 (quoting *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir.

1984)).  This court will not reverse for a failure to develop the record unless Plaintiff can show that he was prejudiced as a result.

In this case there is no evidence in the record indicating a mental impairment during the relevant period.  In addition, Plaintiff has failed to show the he could have or would have adduced evidence about a mental impairment during the relevant period that may have altered the result.  The court finds that the ALJ did not err by failing to consider or develop the record as to any mental impairment and further that Plaintiff has failed to demonstrate any prejudice from the alleged failure to develop the record.

**B.**     **Whether the ALJ erred in making his RFC assessment**.

There must be evidence in the record to support the ALJ's RFC determination.  The term "residual functional capacity assessment" describes an adjudicator's finding about the ability of an individual to perform work-related activities.  Social Security Ruling 96-5p (July 2, 1996) ("SSR 96-5p").  The RFC assessment is based upon "*all* of the relevant evidence in the case record," including, but not limited to, medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations.  Soc. Sec. Ruling 96-8p (July 2, 1996) ("SSR 96-8p") (emphasis in original).  The ALJ is responsible for determining a claimant's RFC.  *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).  In making the RFC assessment and in determining the limitations imposed by a claimant's impairment(s), the ALJ is instructed to consider the entire record.  SSR 96-8p.  As noted in SSR 96-8p,

> RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule. RFC does not represent the least an individual can do despite his or her limitations or restrictions, but the most.

This ruling further provides that exertional capacity involves seven strength demands and that each function must be considered separately. The ALJ must discuss the claimant's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis. Social Security Ruling 96-9p provides that the RFC assessment is a function-by-function assessment.

The regulations further provide:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 CFR § 404.1567(a).

The ALJ found that Plaintiff could perform such work, subject to the noted non-exertional limitations.

Plaintiff alleges that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ failed to fully consider the limitations imposed by his impairments and failed to incorporate such limitations into his RFC assessment. Plaintiff notes that in the RFC assessment, the ALJ found that Plaintiff retained the RFC for a range of light work requiring that he lift/carry no more than 10 pounds frequently and 20 pounds occasionally; stand/walk and sit six hours during an 8-hour workday; with ability to push/pull with the upper extremities limited to 20 pounds; not requiring the ability to handle, finger, or feel with his left hand; and not requiring unimpaired vision. Tr. 23. The ALJ also specifically noted that Plaintiff "would be unable to handle, finger, and feel with his left hand" and "would also be precluded from performing work that requires vision in the left eye." *Id*.

Plaintiff argues that his left forearm atrophy and other findings indicate that he cannot lift anything with his left arm and that the left arm is essentially of "no use" except for balancing things. Plaintiff argues that the RFC fails to take into account Plaintiff's left forearm atrophy and diminished left arm strength and fails to appropriately consider his blindness in the left eye.

Plaintiff testified that he could lift about 25 to 50 pounds using his right arm with the guidance of his left arm. Tr. 232. Plaintiff testified that he had no grip strength in his left hand and that he could not grab anything with that hand. Tr. 239-40.

At the hearing the ALJ presented the hypothetical question to the VE. Tr. 242. The ALJ questioned the VE about the jobs of janitorial cleaners, specifically as to the use of the hands in this case. Tr. 243-44. The Plaintiff's representative also questioned the VE. Tr. 245. The VE testified that the cleaner position could be done with the right hand, the courier position could be done with the right hand, and the laundry worker job would occasionally require the use of the left hand as a helper only. Tr. 245. The ALJ asked the VE if the hypothetical changed to no feeling in the left hand, instead of occasional feeling, would the jobs change. Tr. 245-46. The VE testified that it would not. *Id.*

Plaintiff argues that the RFC does not include any limitation resulting from the atrophy in his left arm and decreased left arm strength. The RFC does include limitations on Plaintiff's use of the left hand and reflects Plaintiff's testimony as to his ability to lift, primarily with his right hand, sometimes using his left arm for balance. Dr. George Woodward indicated on June 24, 2004, that Plaintiff has "definite physical limitation due to his left hand injury" but is capable of performing some work. Tr. 183. Plaintiff testified that he could move his left arm pretty well, indicating "my arm's all right, but my fingers don't work." Tr. 230. He further testified that his right arm had more strength than the left, his left wrist works, and his arm moves; he is just unable to grab things with the left hand. Tr. 240. Although Plaintiff testified that he could lift 25 to 50 pounds, the ALJ

found that his exertional limitations were greater, noting that Plaintiff requires analgesic medication for pain control. Plaintiff testified that he was able to assist his mother, carried out the trash, and took care of his own household chores. The RFC assessment reflects Plaintiff's testimony as well as the medical evidence of record indicating that he experiences physical limitations due to his injury, including less strength in the left arm and the inability to grab things with his left hand. The ALJ specifically noted that in addition to exertional limitations which were greater than those indicated in Plaintiff's testimony, Plaintiff would also be unable to handle, finger, and feel with his left hand. Tr. 23. The RFC finding with regard to Plaintiff's exertional limitations and further limitations imposed by his inability to grab things with his left hand and his ability to use his left hand for balance when lifting and carrying is consistent with Dr. Woodward's notes and with Plaintiff's testimony and is supported by substantial evidence in the record.

Plaintiff further argues that the ALJ erred by failing to consider Plaintiff's inability to see from his left eye in making his RFC finding. The ALJ specifically found that Plaintiff could not perform work which require unimpaired vision. *Id.* The ALJ noted that Plaintiff "would also be precluded from performing work which requires vision in the left eye." *Id.* In his hypothetical question to the VE, the ALJ included a limitation on "no vision in the left eye." Tr. 243. Plaintiff testified that he had no light perception in his left eye. Tr. 231. He also testified that being unable to see from his left eye had not hurt him in terms of being able to work. *Id.* He testified that he had been blind in his left eye since 1992. Tr. 238.

The record demonstrates that the ALJ considered Plaintiff's inability to see from his left eye, discussing the same in his decision and specifically addressing that limitation in his hypothetical to the VE. The ALJ is not required to incorporate limitations into the hypothetical questions presented to the VE or into the RFC finding that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). In this case the ALJ appropriately incorporated those

limitations he found to be supported by the medical evidence of record, as well as by Plaintiff's testimony and reports of his activities, into both the RFC finding and into the hypothetical questions posed to the VE.

Having carefully considered the record as a whole, including Plaintiff's testimony and the medical evidence in the record, it is apparent that the ALJ appropriately considered Plaintiff's impairments and incorporated limitations imposed by such impairments and supported by the record into the RFC finding and into the hypothetical questions posed to the VE. The court finds that the ALJ did not err in considering all of Plaintiff's impairments and the limitations imposed by such impairments, nor did he err in making the RFC finding. The RFC finding is supported by substantial evidence in the record.

**C.      Whether the ALJ erred by failing to give appropriate weight to the opinion of Plaintiff's treating physician**.

Plaintiff argues that the ALJ erred in weighing the opinions of the treating physician, Dr. Brandecker. Plaintiff correctly noted that Dr. Brandecker opined that Plaintiff was disabled on September 21, 2001. Tr. 131. On March 25, 2003, Dr. Brandecker also noted that Plaintiff had recently been doing well with the Klonopin and Hydrocodone taken once and that he had applied for disability. Tr. 128.

The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). On the other hand, "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory,

is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456. Moreover, "[a]mong the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.' These determinations are legal conclusions that the regulation describes as 'reserved to the Commissioner.'" *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (citing 20 C.F.R. § 404.1527(e)(1)). The ALJ was thus not required to give any weight to the opinion of Dr. Brandecker insofar as he indicated that Plaintiff was disabled.

Unless the Commissioner gives a treating source's opinion controlling weight, the Commissioner will consider six factors in deciding the weight to give to any medical opinion. 20 C.F.R. § 404.1527(d). The Fifth Circuit held in *Newton* that "an ALJ is required to consider each of the [six] factors before declining to give any weight to the opinions of the claimant's treating specialist." 209 F.3d at 456. Pursuant to Soc. Sec. Ruling 96-2p (July 2, 1996) ("SSR 96-2p"), and 20 CFR §§ 404.1527(a) and 416.927(a), "medical opinions" are opinions about the nature and severity of an individual's impairment(s) and are the only opinions that may be entitled to controlling weight. The requirement that the ALJ discuss the six factors set forth in *Newton* and 20 C.F.R. § 404.1527(d) applies only to medical opinions and does not apply to conclusory statements that a claimant is disabled. *Frank*, 326 F.3d at 620. Therefore the ALJ was not required to discuss the six factors set forth in *Newton* and 20 C.F.R. § 404.1527(d) in declining to accept Dr. Brandecker's opinion indicating that Plaintiff was disabled.

The ALJ did not err by failing to give appropriate weight to Dr. Brandecker's conclusory statement indicating that Plaintiff was disabled and did not err in evaluating Dr. Brandecker's opinion.

Plaintiff also alleges that the ALJ erred in rejecting the opinion of the state agency medical consultant ("SAMC"), who indicated in March 2005 that Plaintiff could perform no more than a

limited range of sedentary level work. Tr. 192. In his opinion the ALJ noted the opinion of the SAMC. Tr. 23. The ALJ also noted that this opinion was inconsistent with Plaintiff's own testimony and his reports of his activities, as well as with the medical evidence of record, which did not demonstrate a significant decline in Plaintiff's physical health since June 2004, when the ALJ noted he was performing work at the medium exertional level.

"The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). The task of weighing the evidence is the province of the ALJ. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). The relative weight to be given these pieces of evidence is within the ALJ's discretion. *Id.* The ALJ properly exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *Muse*, 925 F.2d at 790. The ALJ thus did not err in rejecting the opinion of the SAMC and appropriately discussed his reasons for rejecting such opinion.

**D.      Whether the ALJ erred in finding that Plaintiff's impairments did not meet or equal in severity Section 1.04 of the Listing of Impairments.**

Plaintiff argues that the ALJ erred in finding at step 3 of the sequential evaluation process that his impairments did not meet or equal in severity any impairment in the Listing of Impairments. He argues that the medical evidence of record demonstrates that his impairments satisfy or are equivalent to the requirements of Section 1.04 of the Listing of Impairments.

In order to obtain a determination of disabled under the Listing of Impairments, an applicant must show that his impairments meet or equal one of the listings in appendix 1 of 20 C.F.R. Part 404. To meet the listing under § 1.04, the Plaintiff must show that he has

[d]isorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture),

-16-

resulting in compromise of a nerve root (including the cauda equina) or the spinal cord [along w]ith:

A      Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

B.     Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

C.     Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b."

*See* 20 C.F.R. Part 4, Subpt. P, App. 1, §1.04. Plaintiff specifically argues that he has met the criteria of § 1.04 A and has therefore demonstrated presumptive disability.

The ALJ determines at step 3 of the 5-step sequential analysis whether a claimant's severe impairments meet or equal one or more of the Listings. At step 3 the burden of proof rests with a claimant. Ultimately, the claimant has the burden of proving that his impairment or combination of impairments meets or equals a listing. 20 C.F.R. § 404.1520(d); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). That burden is to provide and identify medical signs and laboratory findings that support *all* criteria for a step 3 impairment determination. *McCuller v. Barnhart,* 72 Fed.Appx. 155, 158 (5th Cir. 2003); *Selders,* 914 F.2d at 619; 20 C.F.R. § 404.1526(a). If a claimant fails to provide and identify medical signs and laboratory findings that support all criteria of a Listing, the court must conclude that substantial evidence supports the ALJ's finding that the required impairments for any Listing are not present. *Selders,* 914 F.2d at 620. To meet a listed impairment, the claimant's medical findings (i.e., symptoms, signs, and laboratory findings) must

match those described in the listing for that impairment. 20 C.F.R. §§ 404.1525(d), 404.1528; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Plaintiff argues that there is substantial evidence in the record demonstrating that he met the the criteria of § 1.04 A of the Listing of Impairments, with avulsion of the cervical nerve root at C7, C8, and T1, with neuro-anatomic distribution of pain, with motor loss as indicated by atrophy and associated muscle weakness accompanied by sensory or reflex loss. Listing 1.04 A(a) requires motor loss (atrophy with associated muscle weakness or muscle weakness accompanied by sensory or reflex loss). *See* 20 C.F.R. Pt. 404, Subpart P, App. 1, § 1.04 A(a). Disorders of the spine, as listed in § 1.04 of the Listing of Impairments, "result in limitation because of distortion of the bony and ligamentous architecture of the spine and associated impingement on nerve roots or spinal cord. 20 C.F.R. Pt. 404, Subpart P, App. 1, § 1.00 K.

Plaintiff bears the burden of proving that his impairment or combination of impairments meets or equals the listings at step 3 of the sequential evaluation process. 20 C.F.R. § 404.1520(d); *Selder*, 914 F.2d at 619 (citing *Sullivan*, 493 U.S. at 521). A review of the record demonstrates that Plaintiff has not provided medical findings to support the criteria for a finding of disability under Listing 1.04. First, there is no evidence indicating that Plaintiff's impairments arise from a disorder of the spine as describe in Listing §§ 1.00 or 1.04. The record indicates that Plaintiff sustained a left brachial plexus injury in 1992. Brachial plexus injuries, like that sustained by Plaintiff, may cause tearing of the nerve root and may cause a mixed and motor sensory disorder of the corresponding limb.[3] There is no evidence indicating that Plaintiff has experienced limitation of motion of the spine.

---

[3] The Merk Manual, Ch. 260, Disorders of the Newborn at 2132-22; Ch. 183 Disorders of the Peripheral Nervous System at 1490-91 (17th ed. 1999).

Section 1.00 K provides that neurological disorders resulting from impingement on the nerve root should be evaluated by referral to the neurological listings, set forth in Section 11.00. 20 C.F.R. Pt. 404, Subpart P, App. 1, § 1.00 K Sections 11.14 and 11.08 of the Listing of Impairments, dealing with peripheral neuropathies and with spinal cord or nerve root lesions due to any cause, both require disorganization of motor function, including sensory or motor aphasia resulting in ineffective speech or communication; or significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station. 20 C.F.R. Pt. 404, Subpart P, App. 1, §§ 11.00, 11.04, 11.08, 11.14. The medical evidence of record does not support a finding that Plaintiff has met each of the criteria of any of these listings.

Plaintiff also argues that his impairment is of sufficient medical severity to constitute medical equivalence. He must provide medical findings that support each of the criteria for the equivalent impairment determination. *Id*. The evidence of record does not include medical findings to support each of the criteria of § 1.04 A of the Listing of Impairments or any other Listing. The task of weighing the evidence is the province of the ALJ. *Chambliss*, 269 F.3d at 523. The relative weight to be given these pieces of evidence is within the ALJ's discretion. *Id.* The ALJ properly exercised his responsibility as factfinder in weighing the evidence and in finding that Plaintiff's impairments, singularly and in combination, did not meet or equal in severity any impairment in the Listing of Impairments. Plaintiff failed to carry his burden at step 3 to show that he met or equaled the criteria of the appropriate section of the Listing of Impairments. The court finds that the ALJ did not err in finding that Plaintiff's impairments did not meet or equal in severity § 1.04, or any other section of the Listing of Impairments, and his finding is supported by substantial evidence in the record.

**E.     Whether the ALJ erred at step 5 in finding that he can perform other work existing in significant numbers in the national economy.**

Plaintiff argues that the ALJ erred and failed to carry his burden at step 5 of the sequential evaluation process by relying upon testimony by the VE which conflicts with the DOT.

Plaintiff notes that her representative questioned the VE regarding the source of her information.  The VE testified that the source of her information was the DOT.  Plaintiff argues that the ALJ erred in relying upon the testimony of the VE in making his step 5 determination because the jobs identified by the VE did not comply with the limitations incorporated into the hypothetical questions posed by the ALJ and because the testimony of the VE conflicted with the DOT.

A vocational expert is called to testify because of his familiarity with job requirements and working conditions. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir.1986)). "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Id.*   In testifying, a VE "is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Fields*, 805 F.2d at 1170. The ALJ is not required to incorporate limitations into the hypothetical questions presented to the VE that he did not find to be supported in the record.  *See Morris*, 864 F.2d at 336.

Clearly, an ALJ may not rely on evidence provided by a VE if that evidence is based on underlying assumptions or definitions that are inconsistent with the agency's regulatory policies or definitions – such as exertional level, skill level, and transferability of skills.  *See* Soc. Sec. Ruling 00-4p (December 4, 2000) ("SSR 00-4p").  This Ruling notes that neither the DOT nor evidence from a VE "trumps" the other. *Id.*  Rather, "[t]he DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in

specific settings." *Id*. SSR 00-4p notes that the VE may provide testimony regarding the requirements of a particular job "as it is performed in specific settings." This ruling also requires the ALJ to ask about any possible conflicts between the testimony of the VE and the information provided in the DOT. *Id*.

The Social Security Administration has taken "administrative notice" of the DOT. *See* 20 C.F.R. § 416.966(d)(1). However, the Fifth Circuit has recognized that "the DOT is not comprehensive, in that it cannot and does not purport to include each and every specific skill or qualification for a particular job." *Carey*, 230 F.3d at 145 (citing *Fields,* 805 F.2d at 1171).

In *Carey* the Fifth Circuit addressed a case in which the claimant argued that the testimony of the VE, which the ALJ relied upon, conflicted with the *Dictionary of Occupational Titles. Id.* at 146. The Fifth Circuit again noted that "[t]he value of a vocational expert is that he [or she] is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed" and found that "DOT job descriptions should not be given a role that is exclusive of more specific vocational expert testimony with respect to the effect of an individual claimant's limitations on his or her ability to perform a particular job." *Id.* at 145; *see Fields*, 805 F.2d at 1170. The Court indicated its agreement with the majority of the circuits that the ALJ may rely upon the VE's testimony, provided that the record reflects an adequate basis for doing so. *Carey*, 230 F.3d at 147. The Fifth Circuit in *Carey* also noted that a claimant may not raise the issue of a possible conflict after the fact when a representative did not question the VE as to such conflict. *Id*.

In this case the VE testified that there are "cleaners at the light level, janitorial type service workers," with 10 to 12,000 cleaners *at the light level*." Tr. 243 (emphasis supplied). The ALJ questioned the VE regarding the janitorial cleaner, "[A]re your numbers reduced somewhat or are those the full range of that type of work?" Tr. 244. The VE testified that "[t]he janitorial cleaners

are . . . like the office building team cleaners.  They're not the full number of cleaners."  *Id*.  The ALJ specifically questioned the VE as to how such hypothetical cleaners function in the work environment.  The VE testified that such cleaners could use one hand, vacuuming the carpet, emptying trash cans, wiping down counters or cleaning mirrors or glass.  *Id*.  The ALJ asked the VE if her testimony conformed to the DOT, *except where noted*, and the VE testified that it did.  *Id*.

Plaintiff's representative also questioned the VE.  He asked if in the jobs identified the VE had considered "the use of the left hand in any fashion used in those jobs." Tr. 245.  The VE testified that "[for] the jobs . . . identified . . . the job would be done with the right hand," noting that this was true of the cleaner position and the courier position and that the left hand would occasionally be used as a helper for the laundry worker position.  Tr. 245.  The VE also testified that a person who had no vision in the left eye could perform the job of a courier or delivery person. Tr.243.

As Plaintiff notes, the DOT identifies job listing 381-687-018 as one with medium exertional level strength requirements.  The VE testified that there were a reduced number of cleaner jobs at the light exertional level.  SSR 00-4p clarifies that the DOT lists the maximum requirements for a position as it is generally performed, not the full range of requirements.  Clearly, "the categorical requirements listed in the DOT do not and cannot satisfactorily answer every [ ] situation."  *Carey*, 230 F.3d at 146.

In this case the ALJ elicited testimony from the VE indicating that the cleaner job numbers referred only to a range of janitorial work at the light exertional level, which could be performed with one hand and which did not require vision in the left eye.  The ALJ specifically asked the VE if her testimony conflicted with the DOT, except as particularly noted.  Plaintiff's questioned the VE about her testimony in detail, as did the ALJ.  In testifying, the VE appropriately used her special expertise to "to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the

specific job." *Fields*, 805 F.2d at 1170. SSR 00-4p specifically notes that "[t]he DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings" and further indicates that the VE may provide testimony regarding the requirements of a particular job "as it is performed in specific settings." The record demonstrates that the VE in this case testified as to specific numbers of jobs that met the requirements of the hypothetical, a number which she indicated was reduced and reflected the limitations noted by the ALJ. The ALJ addressed possible conflicts in the testimony of the VE and the DOT; Plaintiff's representative further questioned the VE as to these jobs. The VE testified that a person with Plaintiff's RFC could perform these jobs, even with the limitations imposed by Plaintiff's inability to grasp, handle, and finger with his left hand and his lack of vision in the left eye. "[C]laimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing." *See Carey*, 230 F.3d at 146-47. The ALJ elicited testimony from the VE which provided an adequate basis for relying upon such testimony.

The record demonstrates that the ALJ did not err in relying upon the testimony of the VE at step 5 of the sequential evaluation process. Such testimony constituted substantial evidence in support of the ALJ's finding at step 5 that Plaintiff can perform other work which exists in significant numbers in the national economy.

The court, therefore, finds that the ALJ did not err by failing to consider all of Plaintiff's impairments and the limitations imposed therein, did not err in making his RFC assessment, did not err in weighing the opinions of the treating physician or the SAMCs, did not err in finding that Plaintiff's impairments did not meet or equal in severity any listing in the Listing of Impairments, and did not err by relying upon the testimony of the VE at step 5 of the sequential evaluation process

to find that Plaintiff could perform other work which exists in significant numbers in the economy. The ALJ's decision is supported by substantial evidence in the record.

## IV.    CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court finds that the ALJ did not err, that the ALJ's opinion and the RFC determination are supported by substantial evidence in the record, that the Commissioners's decision should be affirmed, and that Plaintiff's complaint should be dismissed with prejudice.

**IT IS, THEREFORE, ORDERED** that the decision of the Commissioner denying Plaintiff's applications for a period of disability and disability insurance benefits and for supplemental security benefits is **AFFIRMED**.

**IT IS FURTHER ORDERED** that Plaintiff's complaint filed May 8, 2007, is **DISMISSED WITH PREJUDICE.**

A judgment in accordance with this decision shall be entered.

**SO ORDERED.**

DATED this 5th day of September, 2008.

**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**